# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **DOMINICK CIRELLI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **No. 09 C 3862** |
| | ) | |
| **MICHAEL J. ASTRUE, Commissioner** | ) | **Judge Ruben Castillo** |
| **of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Dominick Cirelli ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). (R. 1, Compl.) Presently before the Court is Plaintiff's motion for summary judgment seeking an award of benefits, or in the alternative, a remand for further proceedings. (R. 16, Pl.'s Mot. for Summ. J.) For the reasons stated below, Plaintiff's motion is granted and the case is remanded for further proceedings.

## RELEVANT FACTS[1]

Plaintiff was born on November 24, 1956, and is a resident of Round Lake Park, Illinois. (A.R. 85, 87.) He completed his GED in 1979. (A.R. 97.) Plaintiff's most recent employment

---

[1] Citations to (R.) refer to the record number that a document is assigned on the docket for this case. Citations to (A.R.) refer to the administrative record of these proceedings, which was filed as R. 11 on the docket.

history includes working as a delivery truck driver, high school cafeteria worker, and a warehouse clerk. (A.R. 93.) Medical records also disclose that Plaintiff has worked jobs in construction and bartending. (A.R. 177, 163.) Plaintiff's last date insured was December 31, 2004. (A.R. 18.)

## I. Medical Evidence

Plaintiff suffers from several medical problems, including polysubstance dependence, hepatitis C, mild depression, a history of peptic ulcers, a history of a gunshot wound to his left biceps and left arm fracture, contracture of his left fifth finger, hypertension, gastroesophageal reflux disease, obesity, and sleep apnea. (*Id.*) Plaintiff alleges that the symptoms caused by these impairments, including fatigue, pain, problems with sitting and standing, frequent diarrhea, dizziness, and sweating, prevent him from working. (A.R. 21.)

### A. Evidence of Physical Impairment

Plaintiff's relevant medical history begins in 2003, when he was hospitalized three times. (A.R. 761.) On August 11, 2003, Plaintiff went to the emergency room at Condell Medical Center after experiencing frequent vomiting with blood, and was diagnosed with acute massive, upper gastrointestinal bleeding with large gastric ulcers and acute respiratory failure. (A.R. 444.) On August 18, 2003, Plaintiff returned to the hospital after suffering acute bleeding caused by the gastric ulcers. (A.R. 594.) He was also diagnosed with a ureteral stone. (*Id.*) On November 17, Plaintiff was again hospitalized, and a stent that had been placed to address his ureteral stone was removed. (A.R. 774.)

In 2004, Plaintiff was incarcerated by the Illinois Department of Correction. (A.R. 150-62.) Progress reports from October to December 2004 document complaints from Plaintiff

regarding calluses on his feet, prescriptions for blood pressure medication, and requests for over-the-counter pain medications. (*Id.*) Following his release, Plaintiff continued to receive blood pressure medication from the Lake County Health Department in January and March 2005. (A.R. 164, 172-75.)

In 2006, several doctors examined Plaintiff and his medical records. In March, Plaintiff visited physician Moo U. Lim, M.D. ("Dr. Lim") twice, and received treatment for his high blood pressure and cellulitis. (A.R. 136-49.) During these visits, his primary complaints were related to his peptic ulcer disease and heartburn. (*Id.*) Two months later, in May 2006, Plaintiff was examined by Sergei Shevlyagin, M.D., Ph.D. ("Dr. Shevlyagin"), at the request of the state agency. (A.R. 177.) Dr. Shevlyagin documented Plaintiff's complaints of right back pain, burning and heaviness in his stomach, chest pain, and pain in his left arm. (*Id.*) He concluded that Plaintiff had a long history of poorly controlled arterial hypertension, a history of gastrointestinal bleeding, chest pain that was not cardiac in origin, back pain, multiple risk factors for coronary artery disease, and peptic ulcer disease, which was in remission. (A.R. 179.)

On June 1, 2006, Plaintiff's records were examined by state agency medical consultant Paul Smalley, M.D. ("Dr. Smalley"). (A.R. 180-87.) Dr. Smalley noted that Plaintiff's treating physician found his hypertension controlled, and that his chest pain as described was not cardiac pain. (A.R. 187.) He also found that there was no evidence of current renal or gastrointestinal problems. (*Id.*) Dr. Smalley concluded that because of Plaintiff's obesity, he should only occasionally climb ladders, ropes, and scaffolds, and should avoid concentrated exposure to extreme heat. (A.R. 181-84.) Otherwise, he found Plaintiff had no exertional limitations. (*Id.*)

On January 16, 2007, Plaintiff was examined by Scott Kale, M.D. ("Dr. Kale"), and

3

Michael W. Stempniak, Ph.D. ("Dr. Stempniak") at the request of the state. (A.R. 366.) Dr. Kale diagnosed Plaintiff with the following medical problems: history of antisocial personality; poorly controlled hypertension; history of myocardial infarction; history of bleeding ulcers; history of polysubstance abuse; history of sleep apnea, shortness of breath and easy fatigability; history of renal artery stenting and kidney stone removal; obesity; history of severe gastroesophageal reflux disorder; and myopia. (A.R. 315-16.) Dr. Kale also noted Plaintiff's complaints of bilateral shoulder pain, shortness of breath, easy fatigability, and anxiety. (A.R. 314.)

On February 7, 2007, David Mack, M.D. ("Dr. Mack"), reviewed Plaintiff's record on behalf of the state agency. (A.R. 318-24.) On Plaintiff's residual functional capacity assessment, Dr. Mack found a few minor exertional limitations and no postural, manipulative, visual, communicative, or environmental limitations. (A.R. 318-21.)

In August 2007, Plaintiff began an 18-month sentence for jewelry theft. (A.R. 363.) On August 31, 2007, Plaintiff was transported to the emergency room after experiencing nausea, vomiting, diarrhea, and melena. (A.R. 362.) He was treated by Susan Loring, M.D. ("Dr. Loring") for bleeding ulcers. (A.R. 361-65.) In September, 2007, testing confirmed that Plaintiff had hepatitis C. (A.R. 415.) On December 21, 2007, Plaintiff was treated for an acute urinary tract infection with reflux. (A.R. 372.) During this period of incarceration, Plaintiff received treatment and medication for his hypertension, complained of burning discomfort in his stomach, and received a renewal for his prescription of Prilosec. (A.R. 367-418.)

**B.    Evidence of Mental Impairment**

Plaintiff's relevant history of mental impairment begins in August 2006, when Plaintiff

4

was hospitalized after an overdose of heroin, cocaine, methadone, and Xanax. (A.R. 189-90, 198.) At the time, Plaintiff denied having any thoughts of harming himself, and listed his current medical problems as sleep apnea, high blood pressure, and bleeding ulcers. (A.R. 192-93.) Paul L. Grindstaff, M.D. ("Dr. Grindstaff") examined Plaintiff, and found his functions for memory, attention, and concentration normal. (A.R. 198.) Additionally, a stress test and EKG were negative. (A.R. 200.) Plaintiff was transferred to the psychiatric unit and examined by Okoli Uzoma, M.D. ("Dr. Uzoma"). (A.R. 305.) Dr. Uzoma diagnosed Plaintiff with mood disorder, not otherwise specified; possible bipolar disorder, not otherwise specified; opiate dependence; and antisocial personality disorder. (A.R. 308.) Dr. Uzoma assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 50, (A.R. 305), which indicated serious symptoms or any serious impairments in social, occupational, or school function. (A.R. 23.) Plaintiff was discharged after a few days and referred to the Lake County Mental Health Department for outpatient follow-up treatment. (A.R. 305.)

On January 16, 2007, Dr. Stempniak conducted a psychological evaluation of Plaintiff at the request of the state. (A.R. 313.) Plaintiff reported that he had been suffering from depression every day for the last five years, and on-and-off for years before that. (A.R. 344.) He stated that he had tried to treat his depression with cocaine and heroin. (A.R. 343.) Dr. Stempniak diagnosed Plaintiff with recurrent, mild major depression and a history of opioid and cocaine dependence. (A.R. 346.)

On February 2, 2007, Carl Hermsmeyer, Ph.D. ("Dr. Hermsmeyer") reviewed Plaintiff's record on behalf of the state agency. (A.R. 347.) He found that Plaintiff's mental disorders, recurrent mild major depressive disorder and an affective disorder, caused mild restriction of

5

activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. (A.R. 350-57.) Dr. Hermsmeyer concluded that while Plaintiff may have problems with understanding, remembering, and carrying out detailed instructions, he had the mental capacity to perform simple one and two-step tasks at a consistent pace. (A.R. 359.)

## II.  The ALJ Hearing

On February 27, 2006, Plaintiff filed for disability insurance benefits and supplemental security income. (A.R. 16.) His claims were denied initially on June 15, 2006, and upon reconsideration on February 23, 2007. (*Id.*) Plaintiff then requested a hearing before an ALJ. (*Id.*) The hearing took place on January 22, 2008, via teleconference before ALJ Anne Pritchett in Evansville, Illinois; Plaintiff appeared at the Big Muddy Correctional Facility in Ina, Illinois. (*Id.*) At the hearing, additional testimony was heard from Lisa Courtney, a vocational expert, and Rosemary Cirelli ("Mrs. Cirelli"), Plaintiff's wife. (*Id.*) Plaintiff was represented by attorney Erwin Cohn. (*Id.*)

During the hearing, Plaintiff recounted his medical and employment history. Upon questioning from his attorney, Plaintiff testified about his hospitalization in 2003 caused by bleeding ulcers. (A.R. 1014.) Plaintiff testified to the severe blood loss that occurred, as well as the weakness and pain he felt subsequent to his release from the hospital, leading up to his readmission to the hospital for a kidney stone and the reopening of his ulcers. (A.R. 1015-19.) Plaintiff testified that after his discharge, he "could do nothing" because he had no strength, and continuously suffered from diarrhea. (A.R. 1019.)

Plaintiff next testified about his employment in 2004 as a driver and machine loader.

6

(A.R. 1020.) He described the physical requirements of the job, which included some light and heavy-weight lifting, and how he resigned from the job after two car accidents and an ultimatum from his supervisor related to his drug use. (A.R. 1020, 1028.) He also testified that after a day's work, he felt fatigued, dizzy, and would suffer from frequent nosebleeds and diarrhea. (A.R. 1021.) Plaintiff testified that in the period after he left his job, he had poor eyesight and frequent diarrhea. (A.R. 1023.) He stated that he took medication that made it "easier for him," but that it was not the right medication. (A.R. 1024.) Plaintiff testified that he had pains all over his body, difficulty standing for long periods of time, sweated profusely, and had difficulty breathing. (A.R. 1024-25.) He stated that even tying his shoes was "very difficult." (A.R. 1025.)

Plaintiff next recounted the medical treatment he had received from the Lake County Health Department, where he was placed on blood pressure medication to control his sweating and vision problems. (A.R. 1025-26.) Plaintiff also testified about his treatment at Condell after a drug overdose. (A.R. 1026-27.) He stated that he was admitted to McHenry Hospital, and was later transferred to a mental facility, where he told his doctors that he was trying to commit suicide. (A.R. 1027.)

When questioned about his drug use, Plaintiff admitted that he had used both cocaine and heroin in the past. (A.R. 1026.) He further testified that he had quit "cold turkey" with the help of his wife and remained clean for at least two or three years. (A.R. 1026-28.) He testified he used drugs "strictly because of [his] aches and pains" that he blamed on "beating up [his] body" at a young age by working construction starting at age 17. (A.R. 1028.) Plaintiff testified that he resumed using drugs "because of the pain" as a form of self-medication, and this affected his work. (*Id.*)

Plaintiff further testified that he had not worked since September 2004, because he did not believe he could perform any job due to the pain he experienced. (A.R. 1030.) He found sitting uncomfortable and could not stand for more than twenty minutes at a time. (*Id.*) Plaintiff testified that he was not allowed to work at the correctional facility where he was incarcerated because of his medical records. (A.R. 1030-31.) He stated that he had been hospitalized at Centegra in Woodstock for "another bleedout" in 2007, and was subsequently placed on painkillers. (A.R. 1031.) However, after he was released, he was unable to afford the medications and stopped taking them. (A.R. 1032.) Plaintiff testified that at the Centralia correction facility he was receiving treatment for high blood pressure, his liver, and for hepatitis C. (*Id.*) Plaintiff stated that since being diagnosed with hepatitis C in 2007, he had lost 60 pounds, felt very weak, and was in constant pain. (A.R. 1032-33.) He testified that he did not think he could do the job he did in 2004 because the pain he experienced was "crippling." (A.R. 1034.)

Next, the ALJ questioned Plaintiff about his employment history. (A.R. 1037.) Plaintiff testified that he had worked as a rapid trucker in 2001 for four to five months, a stocker and part-time cook in 2001 for three to four months, a sign delivery driver in 2002, and a warehouse supervisor in 2004 for two to three months. (A.R. 1038-41.)

The ALJ next heard testimony from Mrs. Cirelli. (A.R. 1042.) She stated that beginning in the summer of 2003, she noticed that Plaintiff "was tired all the time," sweated profusely, and would complain about having joint and muscle pain. (A.R. 1043.) Mrs. Cirelli testified that Plaintiff would return from work "completely exhausted," "sopping wet," and with "muscle aches all the time." (A.R. 1045.) She stated that he would not even get out of bed two or three days a week, and would frequently vomit, have diarrhea, and headaches. (A.R. 1046.) She also testified

about his profuse sweating and body odor, which she stated was caused by the bleeding ulcers. (*Id.*) Mrs. Cirelli testified that his symptoms grew worse over the years, and that in 2006, he "sunk into depression." (A.R. 1047-48.) She noted that the only time that Plaintiff saw doctors was in emergency rooms, and because he could not afford to see specialists, he would wait until his "next episode" to go to the hospital. (A.R. 1048.) Mrs. Cirelli had some difficulty remembering dates while testifying, and noted that she and Plaintiff had been separated "on and off" for a long time. (A.R. 1045.)

The final witness was Lisa Courtney, a vocational specialist. (A.R. 1053.) She classified Plaintiff's previous jobs as semiskilled and unskilled. (A.R. 1053-1059.) She testified that, according to Plaintiff's previous employment, he could work as a sales and route driver, warehouse supervisor, warehouse clerk, order clerk, or traffic clerk. (A.R. 1058-59.) However, when the ALJ asked the vocational expert whether–assuming Plaintiff's testimony was credible and his impairments supported by substantial medical evidence–he was capable of performing work on a sustained competitive basis, the vocational expert testified that he could not. (A.R. 1060-61.)

### III.     The ALJ Decision

On October 9, 2008, the ALJ concluded that Plaintiff was not disabled from September 1, 2004, the alleged onset date, through the date of her decision. (A.R. 26.) Therefore, Plaintiff was not entitled to disability insurance benefits or supplemental security income. (*Id.*) This decision rested on six key findings.

The first finding made by the ALJ was that Plaintiff met the insured status requirements of the Act through December 31, 2004. (A.R. 18.) Second, the ALJ found that Plaintiff had not

engaged in substantial gainful activity since September 1, 2004, the alleged onset date. (*Id.*)

Third, the ALJ found that Plaintiff suffered from the severe impairments of polysubstance dependence and hepatitis C. (A.R. 18.) She also found that Plaintiff suffered from several non-severe impairments, specifically, mild depression, peptic ulcers, a history of a gunshot wound to his left biceps and left arm fracture, contracture of his left fifth finger, hypertension, gastroesophageal reflux disease, obesity, and sleep apnea. (*Id.*) She concluded that these impairments were not severe because they did not cause more than a minimal limitation on Plaintiff's ability to perform basic work activities, did not last for the required durational period of 12 months to qualify as severe, or were controlled by medication. (A.R. 18-19.)

Fourth, the ALJ found that although Plaintiff suffered from severe impairments, they were not severe enough to satisfy the requirements for a listed disability under 5.05 (chronic liver disease), 12.04 (affective disorders), or 12.09B (substance addiction disorders).[2] (A.R. 19-20.) The ALJ concluded that the requirements of 5.05 were not met because there was no indication or allegation that the severity of Plaintiff's hepatitis C was sufficient to satisfy the requirement of the listing. (A.R. 19.) With regards to 12.04 and 12.09B, the ALJ found that Plaintiff's mental impairment did not result in at least two of the following, as required by the listings: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. (A.R. 20.) Instead, the ALJ found that Plaintiff had only mild restriction in the activities of daily living, in social functioning, and in maintaining

---

[2] These listings are found in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App.1.

concentration, persistence or pace. (*Id.*) Additionally, the ALJ found that Plaintiff had

experienced no episodes of decompensation. (*Id.*) Finally, the ALJ determined that the

requirements in 12.04C for depression were not satisfied because there was insufficient evidence

to meet the listed criteria. (A.R. 20-21.)

Fifth, the ALJ found that Plaintiff's residual functional capacity enabled him to perform

semi-skilled work. (A.R. 21.) In making this determination, the ALJ found that Plaintiff's

medically determinable impairments could reasonably be expected to produce Plaintiff's alleged

symptoms (fatigue, pain, diarrhea, sweating, dizziness, and problems with sitting and standing).

(*Id.*) However, the ALJ found that Plaintiff's statements regarding the intensity, persistence and

limiting effects of the symptoms were not credible because they were not supported by objective

medical evidence. (A.R. 22.) The ALJ noted the lack of documentation of Plaintiff's alleged

symptoms while he was incarcerated from October 21, 2004, to December 17, 2004, and again

from September 6, 2007, to December 29, 2007. (A.R. 23-24.) Additionally, the ALJ found that

Plaintiff failed to complain of the symptoms he claimed to suffer at the hearing when receiving

treatment for other ailments in the past. (*Id.*) The ALJ also found that Plaintiff's credibility was

diminished by several factors, including his history of substance abuse and his criminal history of

numerous burglaries and thefts. (A.R. 24.) The ALJ similarly determined that Mrs. Cirelli was

not a credible witness because her testimony contradicted medical evidence, merely echoed

Plaintiff's testimony, and she had had limited contact with Plaintiff due to their separation and

Plaintiff's incarceration. (A.R. 25.)

The ALJ also found that there were no medical source statements from treating physicians

that expressed an opinion regarding Plaintiff's residual functional capacity. (*Id.*) While several

11

non-treating doctors made determinations related to Plaintiff's residual functional capacity, the ALJ gave their opinions varying degrees of weight depending on their date and whether they were supported by the evidence as a whole. (*Id.*) The ALJ concluded that the residual functional capacity assessment, which indicated that Plaintiff had no limitations on his ability to perform semi-skilled work, was supported by the medical evidence as a whole that indicated no limitations, as well as the lack of medical evidence supporting Plaintiff's alleged limitations. (*Id.*)

Finally, the ALJ found that Plaintiff was not disabled because he was capable of performing past relevant work. (A.R. 26.) After hearing the testimony of the vocational expert, the ALJ determined that Plaintiff's past jobs as a sales route driver, driver helper, kitchen helper, deliverer of merchandise, and warehouse supervisor were performed at the medium or semi-skilled level. (*Id.*) The ALJ concluded that Plaintiff was capable of performing this work because the demands of this work did not exceed the limitations of Plaintiff's residual functional capacity. (*Id.*)

Plaintiff sought review of the ALJ's decision on October 27, 2008. (A.R. 11.) On May 4, 2009, the Appeals Council denied Plaintiff's request for review, (A.R. 5), making the ALJ's ruling the final decision of the Commissioner subject to judicial review. *Blakes v. Barnhart*, 331 F.3d 565, 568 (7th Cir. 2003). On June 26, 2009, Plaintiff filed this action seeking judicial review by this Court. (R. 1, Compl.)

## LEGAL STANDARD

In reviewing the ALJ's decision, the Court is limited to determining whether the ALJ's decision is "supported by substantial evidence and based on the proper legal criteria." *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks

omitted). To determine whether substantial evidence exists, the Court "reviews the record as a

whole but does not attempt to substitute its judgment for the ALJ's 'by reconsidering facts,

reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility.'"

*Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000) (quoting *Williams v. Apfel*, 179 F.3d 1066,

1071-72 (7th Cir. 1999)). The ALJ does not need to mention every piece of evidence but must

establish an "accurate and logical bridge" between the evidence and her conclusions. *Craft v.*

*Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). In reviewing the ALJ's conclusions, the Court "will

'conduct a critical review of the evidence,' considering both the evidence that supports, as well as

the evidence that detracts from, the Commissioner's decision, and 'the decision cannot stand if it

lacks evidentiary support or an adequate discussion of the issues.'" *Briscoe v. Barnhart*, 425 F.3d

345, 351 (7th Cir. 2005) (quoting *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)).

However, if the ALJ's decisions is supported by substantial evidence, "it will be upheld even if an

alternative position is also supported by substantial evidence." *Scheck*, 157 F.3d at 699 (citing

*Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992)).

## ANALYSIS

To be eligible for the disability and disability insurance benefits Plaintiff seeks, he must

establish that he is disabled under the Social Security Act. 42 U.S.C. § 423(a)(1)(E). The Act

defines a disability as "the inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12 months."

42 U.S.C. § 423(d)(1)(A). Under the Act, Plaintiff is disabled only if "his physical or mental

impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* § 423(d)(2)(A). Additionally, to receive disability insurance benefits, Plaintiff must prove that he was disabled on or before the date his insured status expired. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997).

Under the Social Security Regulations, a claim of disability is determined under a sequential five-step analysis. *Craft*, 539 F.3d at 673-74 (citing 20 C.F.R. § 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI)).[3] First, the ALJ must consider whether the claimant is engaging in substantial gainful activity. *Id.* If the claimant is engaging in substantial gainful activity, he is not disabled. *Id.* Second, the ALJ must evaluate whether the claimant's impairment is severe, medically determinable, and meets a durational requirement. *Id.* Third, the ALJ compares the claimant's impairment to a list of impairments that are considered conclusively disabling; if the impairment meets or medically equals one of the listed impairments, then the claimant is considered disabled. *Id.* Fourth, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses a claimant's residual functional capacity ("RFC") and ability to engage in past relevant work. *Id.* If a claimant can engage in past relevant work, he is not disabled. *Id.* Fifth, if the claimant is unable to engage in past relevant work, the ALJ assesses the claimant's RFC, as well as his age, education, and work experience to determine whether the

---

[3] Because the processes of evaluation for DIB and SSI are virtually identical in all respects relevant to the case, the Court will cite only to the DIB sections, found at 20 C.F.R. § 404.1501 *et seq.* The parallel SSI regulations are found at 20 C.F.R. § 416.901 *et seq.*

claimant can engage in other work. *Id.* If the claimant can engage in other work, he is not disabled. *Id.* The claimant bears the burden of proving steps one through four, and the burden shifts to the Commissioner to prove step five. *Briscoe*, 425 F.3d at 352.

In this case, as discussed above, the ALJ found that (1) Plaintiff had not engaged in substantial gainful activity since September 1, 2004, the alleged onset date; (2) Plaintiff suffered from the severe impairments of polysubstance dependence and hepatitis C; (3) Plaintiff's impairment or combination of impairments did not meet or medically equal one of the listed impairments; and (4) Plaintiff had the residual functional capacity to perform semi-skilled work and was capable of performing past relevant work, and was therefore not disabled from September 1, 2004, through the date of the ALJ's decision. (A.R. 18-26.)

Plaintiff argues that the ALJ committed reversible error on four grounds: (1) the ALJ failed to consult a medical expert regarding Plaintiff's hepatitis C at the third step of the disability inquiry; (2) the ALJ failed to properly consider the findings and opinions of medical sources; (3) the ALJ erred in her credibility determinations at step four; and (5) the ALJ erred in her reliance on flawed vocational expert testimony.

## I.     The ALJ's Decision Not to Consult a Medical Expert

Plaintiff's primary argument is that the ALJ erred in not calling a medical expert to determine whether Plaintiff's impairment of hepatitis C met or medically equaled a listing at step

three of the disability inquiry.[4] (R. 16, Pl.'s Mem. at 8, 12-13.) At step three, the ALJ must

consider whether a disability claimant has one or more conditions that the Social Security

Administration considers conclusively disabling. 20 C.F.R. § 404.1520(d). A claimant is

presumptively disabled if the claimant has an impairment that meets or equals an impairment

found in the Listing of Impairments. *Id.*; *Barnett v. Barnhart*, 381 F.3d 664 (2004). The Seventh

Circuit has highlighted three requirements for an ALJ's step three determination to meet the

"substantial evidence" standard upon review. First, the ALJ "must discuss the listing by name."

*Barnett*, 381 F.3d at 668 (citations omitted). Second, the ALJ is required to "offer more than a

perfunctory analysis of the listing." *Id.* Finally, because the determination of "[w]hether a

claimant's impairment equals a listing is a medical judgment," the ALJ "must consider an expert's

opinion on the issue." *Id.* at 670.

 While all three requirements reflect the need for the ALJ to base her conclusions on

"substantial evidence" and to provide an "accurate and logical bridge" between the evidence and

her conclusions, the third requirement is specifically drawn from the relevant Social Security

rulings[5] ("SSRs") and regulations. The SSRs and regulations make it clear that the ALJ is

---

 [4] The Court notes that Plaintiff improperly relies upon Social Security Ruling ("SSR") 83-20 for his claim that the ALJ should have consulted a medical expert. (R. 16, Pl.'s Mem. at 8-10.) SSR 83-20 addresses the relevant evidence to be considered when establishing the onset date of a disability. SSR 83-20, 1983 WL 31249, at *1. Because the ALJ did not find that Plaintiff was disabled, "there was no need to find an onset date." *Scheck*, 357 F.3d at 701. Despite Plaintiff's misplaced reliance on SSR 83-20, the Court still considers the arguments Plaintiff puts forth related to the need for a medical expert based on other Social Security rulings and regulations cited by Plaintiff in his brief.

 [5] Social Security rulings "are interpretive rules intended to offer guidance to agency adjudicators . . . While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000) (internal quotation marks and citations omitted).

responsible "for deciding the ultimate legal question of whether a listing is met or equaled." SSR 96-6p, 1996 WL 374180, at *3. At the same time, however, "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight." *Id.* The Social Security regulations similarly state that ALJs "consider the opinion given by one or more medical and psychological consultants designated by the Commissioner" at the step three equivalence determination. 20 C.F.R. § 404.1526(c)

In this case, the ALJ's entire step three analysis related to Plaintiff's hepatitis C states only that "[t]he claimant's hepatitis C does not meet or medically equal the criteria of listing under 5.0 chronic liver disease as there is no indication, nor does the claimant allege, the severity of his hepatitis C is sufficient to satisfy the requirements of the listing." (A.R. 19.) The Court concludes that this cursory statement does not fulfill the requirements that must be satisfied in order for the ALJ's decision to be based on "substantial evidence." While the ALJ identified the listing relevant to Plaintiff's hepatitis C by name, she referenced no expert opinion and the single-sentence explanation does not meet the "more than perfunctory" requirement of *Barnett*.[6]

Despite the absence of any mention of a medical expert opinion regarding Plaintiff's hepatitis C, the Commissioner argues that the ALJ "reasonably found" that Plaintiff did not meet a listing. (R. 22, Def.'s at 7.) Specifically, the Commissioner claims that state agency physicians indicated that the listings were not met or equaled by submitting Disability Determination and Transmittal Forms and proceeding to the step four RFC assessments. (*Id.*) While it is true that

---

[6] Plaintiff does not dispute the ALJ's finding regarding whether his mental impairments met a listing, and thus the Court does not address the issue.

"Disability Determination and Transmittal forms . . . conclusively establish that 'consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review,'" *Scheck*, 357 F.3d at 700, this safe haven does not apply in this case. Plaintiff received his hepatitis C diagnosis in September 2007. (A.R. 415.) The Disability Determination and Transmittal Forms considered by the ALJ were completed on June 15, 2006, and February 23, 2007, and mention only Plaintiff's hypertension and peptic ulcer disease. (A.R. 64-67.) The RFC assessments were completed June 1, 2006, and February 7, 2007, and list hypertension, chest pain, peptic ulcer disease, back pain, myocardial infarction, and obesity as alleged impairments. (A.R. 180-87, 317-24.) Because Plaintiff received his hepatitis C diagnosis after the state agency physicians reviewed his record, the physicians did not address it; there was no medical expert opinion for the ALJ to consult to determine whether Plaintiff's hepatitis C met or equaled a listing.

The Commissioner further argues that the ALJ's finding that Plaintiff's hepatitis C did not meet or equal a listing was reasonable because no medical source suggested otherwise. (R. 22, Def.'s Mem. at 7.) The Commissioner cites *Buckhanon ex rel. J.H. v. Astrue*, No. 09-1633, 2010 WL 292741, at *5 (7th Cir. Jan. 26, 2010), for the proposition that the ALJ did not err in failing to obtain an updated medical expert opinion because Plaintiff did not ask the ALJ to recontact the state agency consultants and did not provide any opinions on medical equivalence himself. (R. 22, Def.'s Mem. at 9.). In *Buckhanon*, the Seventh Circuit found that the ALJ did not err in failing to seek an updated medical opinion where the ALJ relied on the medical judgment of state agency consultants, the plaintiff submitted new evidence from her treating doctors related to her already-evaluated impairments, and the plaintiff failed to provide any expert opinion herself despite

"gathering other evidence for the record" over several years. 2010 WL 292741, at *5. In this case, however, the ALJ did not rely on the medical judgment of any state agency physicians for her conclusion pertaining to Plaintiff's hepatitis C, and the new evidence submitted by Plaintiff was a diagnosis of a new impairment not previously evaluated. While it is true that no medical source suggested Plaintiff's hepatitis C met or equaled a listing, it is also true that there were no medical opinions at all pertaining to whether Plaintiff's hepatitis C met or equaled a listing.[7] The Commissioner contends that the fault for this lapse falls on Plaintiff, who was represented by an attorney and had the burden to show his impairment met a listing. *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999). Though the burden was on Plaintiff at step three, the ALJ also had an independent "duty to develop a full and fair record." *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000). It is well established that "[t]he procedure for adjudicating social security disability claims departs from the adversary model to the extent of requiring the administrative law judge to summon a medical expert if that is necessary to provide an informed basis for determining whether the claimant is disabled." *Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000). The Seventh Circuit has held that "[f]ailure to fulfill this obligation is 'good cause' to remand for the gathering of additional evidence." *Smith*, 231 F.3d at 437 (citation omitted).

The Social Security rulings and regulations anticipate situations such as this in which there is new evidence of an impairment after a claimant or claimant's records have been evaluated by the state agency physicians. Under SSR 96-6p, "an administrative law judge and the Appeals Council must obtain an updated medical opinion from a medical expert . . . [w]hen additional

---

[7] For this reason, the Commissioner's use of *Nicholson v. Astrue*, No. 08-4016, 2009 WL 2512417, at *4-5 (7th Cir. Aug. 18, 2009), in which the plaintiff sought "an additional medical opinion" is misplaced. In this case, there were no medical opinions pertaining to whether Plaintiff's hepatitis C met or equaled a listing.

medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." SSR 96-6p, 1996 WL 374180, at *3-4. The Commissioner argues that the mandate of SSR 96-6p was satisfied "because the state agency physicians considered the issue of equivalence." (R. 22, Def.'s Mem. at 9.) As previously discussed, however, the state agency physicians never considered the issue of equivalence for Plaintiff's hepatitis C because they examined Plaintiff or his records prior to his hepatitis C diagnosis. Additionally, though the Commissioner claims that "the ALJ did not think the evidence might change the earlier opinions," (*id.*), the Court finds no basis for that argument in the ALJ's opinion other than the fact that she did not obtain an updated medical opinion. Instead, at step two of the disability inquiry, the ALJ concluded that Plaintiff's hepatitis C constituted a severe impairment because it more than minimally affected Plaintiff's ability to perform basic work functions. (A.R. 18.)

The Court finds it unreasonable to believe that the diagnosis of Plaintiff's hepatitis C–an impairment the ALJ concluded was "severe"–would not change the state agency physicians' finding of equivalence when they never even considered it in the first place. When presented with this new evidence, the ALJ should have obtained an updated medical opinion as mandated by SSR 96-6p. *See Buckner v. Astrue*, 680 F. Supp. 2d 932, 940 (N.D. Ill. 2010) ("The problem with the state agency reviews is that Claimant submitted considerable medical evidence in this case well after they were conducted . . . Presented with this situation, the ALJ should have obtained an updated medical expert opinion pursuant to SSR 96-6p. The ALJ could have brought in a Medical Expert to testify at the hearing, or sent the Claimant out for a consultative exam;

20

however, he took no steps to do so."); *Muhammad v. Astrue*, 585 F. Supp. 2d 1023, 1033 (N.D.

Ill. 2008) ("[T]he ALJ should have obtained an updated medical opinion to evaluate the additional

evidence."); *Claiborne v. Astrue*, No. 06-CV-6380, 2007 WL 6123191 (N.D. Ill. Nov. 9, 2007)

("In this case, [plaintiff] submitted supplemental medical evidence which could have changed the

earlier conclusions of the state agency physicians. Accordingly, the ALJ was obligated under SSR

96-6p to seek the opinion of a medical expert before ruling on [plaintiff's] claim."). Because the

ALJ's conclusion that Plaintiff's hepatitis C did not meet or equal a listed impairment was not

based on "substantial evidence," *Scheck*, 357 F.3d at 699, the Court orders the case remanded for

the ALJ to reconsider the step three inquiry as it pertains to Plaintiff's hepatitis C.

## II.     The ALJ's Consideration of Medical Source Opinions

Plaintiff next claims that the ALJ failed to follow the requirements of various Social

Security rulings and regulations when considering the findings and opinions from medical sources

that treated or examined Plaintiff or his records. (R. 16, Pl.'s Mem. at 10.) Because the Social

Security rulings and regulations differentiate between opinions from treating and non-treating

sources, the Court considers the ALJ's treatment of each in turn.

### A.      Opinions of Treating Sources

Plaintiff first argues that the ALJ violated the requirements of 20 C.F.R. § 404.1527(d),

SSR 96-2p, and SSR 96-5p by failing to consider or properly weigh the opinions of Plaintiff's

treating doctors. (R. 16, Pl.'s Mem. at 10.) Specifically, Plaintiff claims that the ALJ failed to

properly consider: (1) the records from Plaintiff's hospitalizations in 2003 from bleeding ulcers;

(2) the records from Plaintiff's hospitalization in 2007 for bleeding ulcers; and (3) the records of

doctors who treated Plaintiff while he was incarcerated at Centralia Correctional Facility that

pertain to Plaintiff's hepatitis C diagnosis and treatment (the "Centralia records"). (*Id.* at 11.)
Section 404.1527(d) addresses how an ALJ should evaluate medical opinions[8] when making
disability determinations. 20 C.F.R. § 404.1527(d). Social Security Ruling 96-2p is a policy
interpretation ruling that explains when treating source medical opinions are entitled to
controlling weight in the process of evaluating medical opinions. SSR 96-2p, 1996 WL 374188,
at *1. Social Security Ruling 96-5 discusses the use of medical opinions on issues reserved to the
Commissioner. SSR 96-5p, 1996 WL 374183, at *1.

Under these rulings and regulations, if the ALJ finds that a treating source's opinion on the
nature and severity of a claimant's impairments is well-supported by medical evidence and not
inconsistent with the case record, the ALJ should give that opinion controlling weight. SSR 96-
2p, 1996 WL 374188, at *2. A treating source is defined as "a physician, psychologist, or other
medical source who provides [a claimant], or has provided [a claimant], with medical treatment or
evaluation and who has, or has had, an ongoing treatment relationship with [a claimant]." 20
C.F.R. § 404.1502. A claimant has an "ongoing treatment relationship" with an acceptable
medical source when the claimant has seen the medical source "with a frequency consistent with
accepted medical practice for the type of treatment and/or evaluation required" for the claimant's
medical condition. *Id.* This may be "only a few times or only after long intervals (e.g., twice a
year)" if the nature and frequency of the treatment is typical for the claimant's condition. *Id.*
Section 404.1527(d), SSR 96-2, and SSR 96-5 stand "for the general proposition that more weight

---

[8] Under Section 404.1527, medical opinions are "statements from physicians and
psychologists or other acceptable medical sources that reflect judgments about the nature and
severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and
prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or
mental restrictions."

will be given to a treating physician's opinion partially because of its longitudinal view." *See Scheck*, 357 F.3d at 702. If a medical source's opinion provides no longitudinal view, "the very reasons the Social Security regulations set out for giving substantial weight to a treating physician's opinion are absent." *Id.* at 702-03; 20 C.F.R. § 404.1527(d)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.").

In this case, there is no evidence, nor has Plaintiff alleged, that Plaintiff has had an "ongoing treatment relationship" with the medical sources that authored the records from his 2003 and 2007 hospitalizations. In the case of the Centralia records, because Plaintiff was incarcerated for several months, he may have had the opportunity to develop an "ongoing treatment relationship" with the doctor or doctors who treated him. However, Plaintiff fails to name or provide any evidence of a treating source other than stating that there are "records of doctors who treated Claimant daily and regularly while incarcerated." (R. 16, Pl.'s Mem. at 11.) Furthermore, Plaintiff fails to provide any evidence that the 2003 and 2007 hospitalization records and Centralia records provide the "longitudinal view" required to qualify as opinions of treating sources. The Court thus rejects Plaintiff's claim that the ALJ improperly failed to give controlling weight to the opinions of treating sources.[9]

---

[9] The ALJ did find that Dr. Lim, who treated Plaintiff twice between September 1, 2004, and December 17, 2004, was a treating physician. (A.R. 22.) However, Plaintiff does not dispute the ALJ's evaluation of the records from Dr. Lim.

## B. Opinions of Non-Treating Sources

Plaintiff additionally claims that the ALJ did not "consider the extent of the treatment by [Plaintiff's] doctors, their relationship, the medical evidence, and the consistency of the[ir] opinion with the record as a whole" as required by Section 404.1527(d).[10] (*Id.* at 11.) Under Section 404.1527(d), when an ALJ considers a medical opinion that is not from a treating source entitled to controlling weight, the ALJ considers the following factors: the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the support ability of the opinion by relevant evidence; the consistency of the opinion with the record as a whole; and other relevant factors. 20 C.F.R. § 404.1502.

The primary discussion of non-treating opinions in the ALJ's opinion occurred at step four in assessing Plaintiff's RFC and ability to engage in past relevant work. Specifically, the ALJ considered the opinions of Dr. Uzoma, Dr. Mack, Dr. Smalley, Dr. Hermsmeyer, and Dr. Grindstaff. (A.R. 25.) When discussing each doctor's opinion, the ALJ articulated her reason for the amount of weight given to the opinion and considered factors listed in Section 404.1527(d). With regards to Dr. Uzoma's finding that Plaintiff had a GAF score of 50, the ALJ gave his opinion little weight because it was based upon an evaluation in conjunction with Plaintiff's heroin overdose. (*Id.*) In discounting Dr. Smalley's 2006 opinion that Plaintiff should only occasionally climb ladders, ropes, and scaffolds because of his obesity, the ALJ pointed out that Dr. Mack found no limitations regarding Plaintiff's obesity in 2007, after Plaintiff had lost nearly 20 pounds. (*Id.*) The ALJ noted that Plaintiff had lost even more weight since Dr. Mack's

---

[10] The Court notes that despite Plaintiff's claim that the ALJ failed to properly consider opinions from non-treating sources, he fails to cite any specific opinion the ALJ did not consider or did not consider properly.

examination. (*Id.*) The ALJ also gave only moderate weight to Dr. Mack's opinion that Plaintiff could only perform no more than medium work because the evidence as a whole did not support any restrictions. (*Id.*) Finally, regarding Plaintiff's mental impairment, the ALJ considered the opinion of Dr. Hermsmeyer, who found that Plaintiff could be limited to performing simple one and two-step tasks at a consistent pace. (*Id.*) The ALJ gave Dr. Hermsmeyer's opinion little weight because it was contradicted by the findings of Dr. Grindstaff, who determined Plaintiff had normal functions for memory, attention, and concentration, as well as Plaintiff's medical records that documented Plaintiff's statements that he owned his own nightclub. (*Id.*)

Given the ALJ's consideration of the factors in Section 404.1527(d) when deciding how much weight to afford the non-treating source medical opinions, the Court cannot conclude that the ALJ's decisions were not supported by "substantial evidence." *See Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). The Court notes, however, that while the ALJ properly weighed the medical opinions in the record at step four and established an "accurate and logical bridge" between the evidence in the record and her RFC conclusion, there was a gaping hole in the evidence as not one of the medical sources she relied upon had considered Plaintiff's hepatitis C. Thus, upon remand, the ALJ should reconsider her RFC determination taking into account any updated medical opinion regarding Plaintiff's hepatitis C.

### III.     The ALJ's Credibility Determinations

Plaintiff next claims the ALJ violated SSR 96-7p because she erred in her determination

that Plaintiff was not credible and by failing to consider the testimony of Mrs. Cirelli.[11] (R. 16, Pl.'s Mem. at 12-13.) Under SSR 96-7p, the ALJ must first determine whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms. SSR 96-7p, 1996 WL 374186, at *2; *Scheck*, 357 F.3d at 701. Second, the ALJ must consider the "intensity, persistence, and functionally limiting effects of the symptoms" to determine the extent to which the symptoms "limit the individual's ability to do basic work activities." *Scheck*, 357 F.3d at 701 (citing SSR 96-7p). If a claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on a consideration of the entire record. SSR 96-7p, 1996 WL 374186, at *2. Because the "ALJ is in the best position to determine the credibility of witnesses," this Court reviews that determination "deferentially," and will overturn a credibility determination "only if it is patently wrong." *Craft*, 539 F.3d at 678. However, the ALJ "must articulate specific reasons for discounting a claimant's testimony as being less than credible." *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005).

In this case, the ALJ found that Plaintiff's symptoms–fatigue, pain, difficulty sitting or standing for long periods of time, diarrhea, profuse sweating, and dizziness–could reasonably be expected to have been caused by Plaintiff's medical impairments. (A.R. 21-22.) However, she found Plaintiff's statements, as well as the testimony of Mrs. Cirelli, regarding the intensity,

---

[11] Plaintiff additionally argues that the ALJ erred in her evaluation of the records and medical documentation in considering whether there was a medically determinable impairment that accounted for Plaintiff's symptoms. (R. 16, Pl.'s Mem. at 12.) Because the ALJ found for Plaintiff at his stage by concluding that Plaintiff's impairments could reasonably be expected to produce his symptoms, the Court does not address this argument.

persistence, and limiting effects of these symptoms not to be credible, and thus determined that Plaintiff was capable of performing prior relevant work. (A.R. 21.)

## A. Plaintiff's Testimony

Plaintiff contends that the ALJ erred in her finding that he was not credible because she drew inferences from his failure to seek regular medical treatment without first considering his explanation, his lack of finances or insurance. (R. 16, Pl.'s Mem. at 13.) While SSR 96-7p does prohibit an ALJ from drawing negative inferences about a claimant's failure to seek treatment without first considering explanations for the failure, *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009), this argument is misplaced in this case because the ALJ did not rest her credibility determination on a finding that Plaintiff failed to pursue medical treatment.[12] Instead, the ALJ reviewed Plaintiff's extensive history of medical treatment, particularly while incarcerated, and noted an absence of complaints regarding the symptoms he alleged at the hearing. (A.R. 22.) She observed that "[t]he lack of documentation of the claimant's symptoms indicates that he either does not suffer from the symptoms he alleges or at least the symptoms are minor enough for him not even to mention them to medical professionals even though he had ample opportunity to do so." (*Id.*) The ALJ additionally listed Plaintiff's criminal history, lengthy history of substance abuse, inconsistent statements regarding his reasons for his drug use, and the lack of objective evidence as additional factors that contributed to her credibility determination. (*Id.*) Thus, because the ALJ reasonably supported her finding that Plaintiff was not credible, the Court cannot say the ALJ's credibility determination was patently wrong. However, given the remand in this

---

[12] While the ALJ did mention Plaintiff's failure to seek treatment for his mental health impairments, (A.R. 24), Plaintiff does not dispute the ALJ's findings regarding his mental health impairments.

case, the ALJ should revisit her findings after consulting a medical expert regarding Plaintiff's hepatitis C to decide if her credibility determination remains the same.

### B.    Mrs. Cirelli's Testimony

Plaintiff next argues that the ALJ erred by failing to consider the lay testimony of Mrs. Cirelli as required by SSR 96-7p.  (R. 16, Pl.'s Mem. at 13.)  When making the credibility determination under SSR 96-7p, an ALJ must consider factors such as the consistency of the claimant's statements with observations by other persons concerning the claimant's "daily activities, behavior, and efforts to work."  SSR 96-7p, 1996 WL 374186, at *3.  Contrary to Plaintiff's claim, however, the ALJ did consider Mrs. Cirelli's testimony; she just afforded it little weight because it was "not consistent with the medical evidence [of] the record and echoes the testimony of the claimant who is found to be not credible."  (A.R. 25.)  The ALJ listed several examples of medical evidence that contradicted Mrs. Cirelli's testimony, and further noted that Mrs. Cirelli's contact with Plaintiff had been limited by their separation and Plaintiff's incarceration.  (*Id.*)  Thus, the ALJ's conclusion that Mrs. Cirelli's testimony should be given little weight was not "patently wrong" and will not be overturned by this Court.

### IV.    The ALJ's Reliance on the Vocational Expert

Plaintiff's final argument is that the ALJ's reliance on the vocational expert testimony was in error because the ALJ's hypothetical question to the vocation expert was based on an RFC determination that did not include expert opinion related to Plaintiff's hepatitis C.  (R. 16, Pl.'s Mem. at 13-14.)  While the ALJ "is required only to incorporate into his hypothetical those impairments and limitations that he accepts as credible," *Schmidt*, 496 F.3d at 846, there was no discussion of Plaintiff's recent diagnosis of hepatitis C–an undisputed diagnosis–and the RFC

determination the ALJ and the vocational expert relied upon failed to consider expert opinion regarding Plaintiff's hepatitis C. Thus, the Court finds that upon remand, the ALJ should revisit her reliance on the vocational expert's testimony based on any changes to her RFC determination and, if necessary, obtain updated vocational expert testimony. *See Young*, 362 F.3d at 1004-05.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment, (R. 16), is GRANTED. This case is remanded for further administrative proceedings consistent with this opinion pursuant to 42 U.S.C. § 405(g).

Entered:

**Judge Ruben Castillo**
**United States District Court**

**Dated:** November 18, 2010